

P.O. Box 206
Dibble, OK 73031
Ph: Sean 405.510.6260
Email: sean@jwcm.us
Website: www.jwcm.us

# Rule 26 Report

This report is for the residents at 16207 E. 47th Place, Tulsa, OK 74134. I have prepared a replacement cost estimate for the roof and exterior of this home. I was also asked to review the existing documentation and other written reports that addressed this home and provide my opinions on them.

## Qualifications & Basis of Opinions

My opinions are based on my review of documents provided to me and site inspections. My opinions are also based on insurance standards learned through my 30 years of experience and training in the construction industry, along with years of insurance adjusting experience and training. As an insurance adjuster, I was trained to determine the cause of loss and identify proper repairs.  This included working as a catastrophic field adjuster for several insurance companies. My role as a catastrophic field adjuster was to inspect structures that were damaged by storms including hurricanes, wind, and hail, determining cause of loss, and writing an appropriate estimate for an insurance company to base payment on. During that time, frequently I was the only person from the insurance company to inspect the property, determine cause of loss, and estimate necessary repairs. During my time as a field adjuster, insurance companies relied on my determination of cause of loss and estimates.

After working as a catastrophic field adjuster, I worked in the roofing industry with Robbins Roofing.  This included working as a residential roofing salesman, project manager, and then a commercial roofing manager.  In this role, I would inspect roofs for hail or wind damage, would assist the homeowner in filing a claim with their insurance company, would meet with the insurance adjuster to show storm damage (often wind and hail), and would write an estimate to be provided to the insurance companies.

EXHIBIT
5

I worked for Blackmon Mooring, which is a preferred contractor for numerous insurance companies. I was the Senior Regional Estimator and wrote thousands of estimates for insurance claims. Frequently, I would inspect the properties in lieu of a field adjuster to determine the cause of loss and appropriate repairs. I would report back to the insurance carrier with my determinations of cause of damage and estimated cost of repair. I worked as the general manager for PCC Cleaning & Restoration. This role included similar assignments as Blackmon Mooring, including inspecting and estimating losses for insurance carriers.

I was also trained to estimate the cost to repair those damages utilizing Xactimate. I am Level 2 certified in Xactimate, water damage restoration through IICRC (Institute of Inspection, Cleaning and Restoration Certification), IAUA (Insurance Appraisal and Umpire Association), CPAU, CPIA and CPIU. I am a HAAG Engineering Certified Residential Roof Inspector and HAAG Engineering Certified Commercial Roof Inspector. My CV is attached to this report. The standards for my estimate evaluations are the line item Xactimate data which is clearly the insurance standard for estimating insurance claims.

In approximately 2017, I began my own general contracting business where I continue to work in restoration and insurance claim related losses and other types of construction.

Through my 30 years of experience, I was trained and gained extensive experience in the field on claim losses including the following skillsets:

- Identifying storm damage including hail and wind damage
- Determining proper repair vs. replacement
- Estimating associated costs with restoring roofing systems back to pre-loss conditions with proper repair techniques

Through the decades of work in the industry, I have conducted approximately thousands of inspections for both policyholders and insurance companies. I have been hired as a building consultant for many insurance companies including Farmers Insurance Company, United Specialty Insurance Company, Peleus Insurance Company, Aspen Specialty Company, Ategrity Specialty Insurance, Navigators Insurance, Hallmark Specialty Insurance, Colony Insurance Company, Tokyo Marine America Insurance Company, North American Risk Services, RLI Corporation, among others. Over the years, insurance companies have hired me to assess millions of dollars in losses on these types of roof claims. Currently, I provide my services to adjusters, homeowners, public adjusters, insurance carriers, and both plaintiff and defense law firms.

## **List of Publications**

I have no publications in the past 10 years.

## **Prior Deposition & Trial Testimony**

Ruth Whiteman v. State Farm Fire & Casualty Company
Oklahoma Western District Court; Case No. 5:16-cv-00975

Joann Bates v. Foremost Insurance Company & Farmers Insurance Exchange
District Court of Cleveland County; Case No. CJ-2015-1332-JV

Meredith and Peter Robertson v. Safeco Insurance Company of America
Oklahoma Western District Court; Case No. 5:17-cv-00

John Fox and Barbara Fox v. Country Mutual Insurance Company
Oklahoma Western District Court; Case No. 5:17-cv-01228-slp

Stevenson v. USAA Insurance & Blackmon Mooring
District Court of Cleveland County; Case No. CJ-2017-544

Mt Hawley Insurance Company v. TFP Properties III LLC
Southern District of Texas Corpus Christi Division; Case No. 2:18-cv-00270

David Francisco v. Farmers Ins. Co. Inc. & Farmers Ins. Exchange
District Court Of Tulsa County; Case No. CJ-17-3603

Michael J. Farmer v. Qbe Ins. Corp. and Corbin D. Swain, P.E.
Oklahoma Western District Court; Case No.19-CV-00628-JD

Graham v. CSAA Fire & Casualty Insurance Company
District Court of Beckham County; Case No. CJ-18-63

Wynonna Public Schools v. Lexington Insurance Company & OSIG
District Court of Osage County; Case No. CJ-19-106

Rogers Oil Company, Inc. v. Amguard Insurance Company
District Court of Kay (Newkirk) County; Case No. CJ-2020-00078

Jo Mariee Hansen v. State farm Fire and Casualty Company, Travis Daugherty
District Court Oklahoma County; Case No. CJ-2019-5903

Ed Moore v. Farmers Insurance Company, Inc., et al.
District Court of Oklahoma County; Case No. CJ-2020-1652

Steven Campbell and Ruth Campbell v. American Farmers & Ranchers
Insurance Company
District Court of Garfield County; Case No. CJ-2020-11

Floyd Guernsey v. American National Property and Casualty Company
Oklahoma Western District Court; Case No.20-632-j

Johnnie L. Greer v. State Farm Fire & Casualty Company
District Court of Canadian County; Case No. CJ-2019-151

Othel and Shawn Cargal v. Farmers Cooperative Association of Eldorado
District Court for Jackson County State of Oklahoma Case No. CJ-2019-1

Betty Lively v. City of Duncan;
District Court for Stephens County; Case No. CJ-2014-24G

Kristin Merchant and Ty Merchant v. Safeco Insurance Company of America
Oklahoma Western District of Oklahoma Case No. 5:2021cv00391

Fairlawn Cemetery Association v. Sentinel Insurance Company LTD
Oklahoma Western District of Oklahoma Case No. 5:2021cv01150

Sequoyah Enterprises, Inc., et al v. AmGUARD Insurance Co.
District Court of Sequoyah County, Case No. CJ-2021-55

Jerry Eckhart and Christi Eckhart v State Farm Fire and Casualty Company
Oklahoma Northern District Court Case No. 4:21-cv-00556-GKF-SH

Jason R. Poudrier v. United Services Automobile Association, et al.
District Court of Grady County; Case No. CJ-2021-76

## **Compensation**

I charge $150.00 per hour for all inspection and estimating time. I charge
$225.00 per hour with an 8-hour minimum per day for time being deposed or
testifying at trial.

## **Inspections of Property**

I have inspected the Bales Family's home on multiple occasions for wind and hail; damage.  On August 2nd, 2023, I video recorded the inspection of the home with Mr. Derek VanDorn located at 16207 E. 47th Place Tulsa, OK 74134.

The Bales Family's home is a single-family home in Subdivision Trinity Creek II addition. The home was built in approximately 2010. The home has a laminated composition shingle roof which was approximately 12 years old at the time of the Bales Family's claim with State Farm Insurance. Based on a conversation I had with the Bales Family, it is my understanding they purchased the home in late 2020. Prior to their purchase of the home, they had an inspection performed and no wind or hail damage was noted to any areas of the roof. Below is a photograph of the front of the Bales Family's home:



## **Investigations, Observations & Grounds for Opinions**

For this assignment, I used the same methodology for identifying storm damage that I have used over the past three decades. This procedure requires a physical inspection of the property including a complete inspection of the home's exterior, and a physical inspection of the roofing surface. During my exterior inspection, I walk the exterior of the home to inspect each elevation. This includes inspecting the exterior doors, garage doors, gutters, downspouts, HVAC units, windows/window screens, soffit, and fascia for evidence of storm damage. I will also look for associated storm damage to fencing, trees, and landscaping. I also will consider any information available related to the pre-loss condition of the home. This includes interviewing the homeowner, speaking to neighbors about damage to their property, reviewing old photos, and any documentation that may be available.

Next, it is industry standard procedure to perform an inspection of the home's roof surface. I will access the roof via ladder or using specialized climbing equipment including a goat, pitch hoppers, rope and harness. I will chalk all valleys and soft metals for evidence of hail damage. Chalking is an insurance industry standard procedure in which a piece of chalk is laid sideways and pulled across the metal surface. A chalk residue is left on the metal surface and assists in the visualization of dents in the valleys and soft metals. These dents are often good indications of hail damage on a roof. Without the chalking process these dents can be felt but are difficult to photograph or identify with the naked eye.

I then perform a visual inspection of all elevations of the roofing system in an attempt to identify wind and hail damage. This includes performing test squares. In storm claims, it is industry standard to mark a test square. A test square is a 10' x 10' marked area for sampling a slope.  If there is enough damage in the test square sampling, the elevation must be replaced.

Based upon my experience in the roofing and insurance industry outlined above, I have been trained on how to identify hail and windstorm damage to a laminated composition shingle roof surface. I use this training and experience to identify such storm damage while inspecting the property's roofing system. Hailstones from a storm will vary by size, shape, and hardness so the roofing surfaces they strike will also vary by size, shape, and depth. During a storm, the pattern of hail fall is random and will result in a random pattern of impact marks on the roof. This is why it's very important to inspect the whole roof. It is also important to note that during a storm the hail is often wind driven and may impact the slopes of the roof differently.

Hail damage on a laminated composition shingle roof surface is identified by bruising, chipping, punctures, or fractures of the laminated composition shingle. This is usually seen by round bruises on a laminated composition shingle. Below are photographs of laminated composition shingles identified by HAAG as damaged by hail:










Wind damage on a laminated composition shingle roof surface is identified by missing shingles, lifted shingles, creased shingles, or torn laminated composition shingles. During a windstorm, wind speeds will vary from different directions and can cause more severe damage to different slopes of the roof. Below are photographs of laminated composition shingles identified by HAAG as damaged by wind:






I inspected the Bales Family's home on multiple occasions. During my inspections, I observed the home has significant storm damage to the laminated composition shingle roof surface, soft metals, gutters, down spouts, and HVAC vents. I reviewed Ally Public Adjusters report after I inspected the roof and we both found significant hail and wind damage to the roof.

My inspections of the Bales Family's home were consistent with my standard procedure outlined above.

I performed an exterior inspection of the Bales Family's home consistent with the procedure outlined above. I walked the exterior of the home and inspected each elevation. During this inspection, I observed storm damage to gutters and downspouts. As discussed above, hail damage to these metal surfaces is identified by chalking, looking for dents, and feeling the associated dents. Some representative photographs of the associated exterior damage on the Bales Family's home include:



I also accessed the Bales Family's roof via a ladder, Goat, and pitch hoppers to inspect the roof surface. This included chalking of the soft metals for evidence of hail damage in the manner outlined above. This process found several dents that were indicative of hail damage to the Bales Family's soft metals. Some representative photographs of hail damage found to the valleys and soft metals include:





During my inspection of the Bales Family's home, I observed extensive storm damage to the laminated composition shingles and roof surfaces consistent with the descriptions of wind and hail damage described above. Specifically, I performed test squares on each of the slopes to mark and test for hail and wind damage. Within these test squares, I observed bruising, punctures and fractures in the laminated composition shingles indicative of hail damage. I also felt the bruising and dents to the laminated composition shingles to confirm. I also observed lifted shingles indicative of wind damage. There is a tarp covering wind damaged shingles on the lower west hip. I observed additional wind damaged shingles on the upper west slope of the roof. Within each of the test squares I performed, I found 8+ hail hits and/or wind damage. Per roofing and insurance standards, this requires the slopes to be replaced. Some example photographs of the storm damage found include:







Based on my observations described above, it is my opinion the roof surface damage outlined above is associated with wind and hail from the storm in question. The entire roof will need to be replaced.

During the inspection, I noticed several deficiencies in Mr. VanDorn's methodology that resulted in a failure to properly identify wind and hail damage. For example, I noticed that Mr. VanDorn was placing his thumb on hail impacts and photographing his thumb so that the impacts were covered in the photos.

I marked hail damages in bluish green chalk during my inspection. Mr. VanDorn's chalk markings are in white and pink. Of the four test squares I performed, three were the same, or within a few feet of, the same test squares Mr. VanDorn performed. The test square I performed on the east elevation of the roof was not in the same general area of Mr. VanDorn's test square on that elevation. As is depicted in my photographs, I found and marked hail damage within Mr. VanDorn's test squares that he did not acknowledge. He did not circle any of the bruising or hail damage visible in his test squares. It is contrary to the roofing and insurance industry standard to deliberately disregard storm damage, strategically place test squares to areas of lesser damage, hide storm damage, or only document non-storm related damage.

## Statement of Opinions

#1 The laminated composition shingled roof surface and associated metals were damaged by wind and hail.

#2 State Farm's estimate is inaccurate and substantially undervalues the cost needed to repair the damage from this storm. The estimate contains deficiencies, including but not limited to, the line item used for roofing does

not pay adequately for the shingles or labor. A bundle of Tamko heritage shingles has 20 shingles per bundle. State Farm paid for 5 shingles only. You cannot buy shingles individually. Since the roof has not been replaced, all material costs have increased considerably. Also, State Farm paid for 5 shingles when the extent of storm damage, per industry standard, requires replacement of the entire roofing system.

#3 The replacement cost of necessary repairs to the Bales Family's home from this loss is $35,696.23 which I have itemized in the attached Xactimate estimate. This is based on current price books. Based on January 2022 price books, the replacement cost of necessary repairs to the Bales Family's home from this loss is $32,056.12.

## **Documents, Data & Information Reviewed & Considered**

- Eagleview
- Seek Now Report
- State Farm's Estimates
- Ally Public Adjusters' Estimate and Photos
- State Farm's Photos
- Tulsa County Assessor - 16207 E 47 PL S TULSA 74134-4705
- My photos
- Information provided during an interview with the homeowners

I reserve my right to amend or supplement this estimate if new information is provided.


*R. Sean Wiley*
R. Sean Wiley

8/4/2023
Date