# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)  ROBERT BALES and<br>(2)  DANIELLE BALES,<br><div align="right">Plaintiffs,</div><br>v.<br><br>(1)  STATE FARM FIRE AND CASUALTY<br>COMPANY,<br><div align="right">Defendant.</div> | Case No: 22-cv-00851 |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is not the simple disagreement portrayed by State Farm. Instead, as shown herein, State Farm ignored and then misrepresented the findings of its own inspector, failed to properly estimate for repairs that it agreed were needed, and rewrote the policy by means of an extracontractual definition of "hail damage." That was all bad faith claim handling.

Plaintiffs bought the home in November 2020. Their prepurchase roof inspection was clean. In January 2022, they noticed several missing shingles after a storm. They contacted a roofer to inspect. The roofer reported substantial hail damage and said the roof needed to be replaced. The Bales then called their insurer, State Farm, and made a claim.

State Farm called out a third-party vendor, Ladder Now (or "Seek Now" as it is also called). Plaintiffs' roofer attended the Ladder Now inspection. As the roofer has now testified, State Farm's Ladder Now agent found, marked, and photographed substantial hail damage. To this point, two of Ladder Now's photographs show its "test square" "hail

counts."[1] One reads "R=10+," another "F=10+". These are industry-wide markings which are universally understood to mean that there were more than ten hail hits in these test squares (for the rear and front roof "elevations"). Industry standard requires replacement of any affected roof elevations with that many hail strikes. Despite the two "10+" findings by Ladder Now, State Farm's estimate was less than Plaintiffs' deductible and did not include any hail-damaged shingles; State Farm did not pay a penny.

As noted above, in addition to the hail *count* discrepancy, the Ladder Now agent also marked and photographed many hail-damaged shingles. State Farm claims that all of that marked damage is wear and tear, and that the Ladder Now agent was noting areas of concern pointed out by the roofer (the report generated after the Ladder now inspection says "P.A./Contractor Considerations" next to the marked hail damage).[2] In the roofer's deposition, however, he testified that Ladder Now was marking its own concerns. He testified that he has witnessed hundreds of Ladder Now inspections and it always marks *what it thinks is* hail damage in the manner shown in the Ladder Now photographs.[3] This gives the appearance that someone altered the report to cover up the actual results of the Ladder Now inspection. State Farm's claims handling got worse from there.

Faced with State Farm's "denial," Plaintiff retained a public adjuster to further evaluate the condition of the roof and State Farm's claim determination. Like Plaintiffs'

---

[1] A "test square" is 100 square foot section marked on a roof for counting wind or hail-damaged shingles. Once the damage count in any test square reaches a certain number (usually 8-10 shingles) then that particular roof slope (or "elevation") must be replaced.

[2] No public adjuster was involved at that time.

[3] The roofer calls the marks "circles," though they are more parentheses than true circles.

roofer, the public adjuster also found significant hail damage to the roof shingles and evaluated the roof as a total loss requiring replacement. The public adjuster also called State Farm's attention to the above-noted hail count photographs and asked for another inspection. State Farm agreed to reinspect, but claimed (and still claims) that the hail count photograph really just indicates that the size of the test square is "10x10" rather than an indication of more than 10 hail hits. That claim is shown to be patently false by other photographs taken by Ladder Now which show that it clearly marks its square size as "10x10" rather than the "10+" shown in the disputed photographs. Plaintiffs have since learned that State Farm, though it claims the markings indicate the square size, never sought to confirm this "fact" with the Ladder Now agent. That sure smacks of an attempt to cover up the discrepancy. That is evidence of an inadequate or sham investigation.

Plaintiffs' public adjuster attended the second inspection. This time the State Farm adjuster showed up and brought another adjuster as backup. The public adjuster pointed out multiple hail-damaged shingles. <u>One of the State Farm adjusters—the adjuster responsible for the claim—agreed with the public adjuster that the particular shingles were hail-damaged</u>. The other adjuster argued that <u>the damage</u> did not meet State Farm's internal guideline <u>for "qualifying" hail damage,</u> which apparently requires that the hail fully penetrate the affected shingle. The problem with that "guideline" is that it is not supported by the language State Farm chose to write into the policy. The policy is a replacement cost, all-perils policy that covers "accidental direct physical loss." There is no cosmetic exclusion or any exclusion for loss that does not fully penetrate the shingle. It is bad faith to impose an extracontractual policy term to deny an otherwise covered claim—there is

3

specific case law against State Farm in the Northern District of Oklahoma to this very point.

Despite the public adjuster pointing out specific hail damage to the shingles—
<u>damage that both State Farm adjusters said was, at least, "hail-caused granular loss" which
damage the lead adjuster seem to think by his agreement with the public adjuster, was even
more substantial hail loss than just granular hail loss</u>—State Farm stood on its claim that
there were no hail-damaged shingles. At minimum the above casts doubt upon State Farm's
determination that there were no hail-damaged shingles.

To the above point, the lead adjuster admitted in his deposition that hail-caused
granular loss shortens the lifespan of a roof—but still he imposed State Farm's
extracontractual *qualifying hail damage standard*. He admitted that State Farm only covers
"functional" hail damage which it defines as damage that compromises the roof's water
shedding capability. *But the subject all-perils policy does not have any exclusionary
language permitting the insurer to "exclude" damage that does not affect water shedding.
To this point, a roof is not just a water barrier. Indeed, the purpose of the "granules,"
which are made of ceramic, is to protect the roof components from UV radiation. That is
not to create a water barrier, but instead to protect the underlying layers from premature
wearing. The granules also provide fire protection. Finally, a roof covering is also
<u>designed</u> to provide eye appeal. Even loss to such aesthetic function is covered loss under
an all-perils policy—and case law holds that it is bad faith to deny such coverage.*

The above means that what State Farm now claims is non-covered "wear and tear"
is just as likely to be the very hail caused granular loss that allowed it to make such a
specious claim in the first instance. Such insurance doublespeak and circular reasoning is

also bad faith. Because the policy provides all-perils coverage, State Farm—because it bears the burden of proving that an exclusion applies—should have resolved any "uncertainty" in this regard in favor of its insured and in favor of coverage. Instead, State Farm construed that uncertainty in its own favor. That too is bad faith.

At this point, Mr. Bales contacted the undersigned firm, which asked Sean Wiley[4] to inspect the roof to determine whether the claim was valid. Wiley also found substantial damage. He, rather like State Farm's Ladder Now agent, found "8+" hail or wind damaged shingles in each of his test squares.[5] Not only is this evidence that State Farm either missed or ignored hail damages shingles, but it is also more evidence that the Ladder Now agent's "10+" designation referred to a damaged shingle count rather than to square size.

Additionally, despite its own "inspector" finding and marking extensive hail damage, and its adjusters agreeing there was granular loss (which one testified reduces shingle life-span), State Farm "estimated" to replace only the five shingles that blew off the roof and the hail-damaged roof metals. State Farm contends all of this damage is excluded wear and tear. It is bad faith for an insurer to ignore its own evidence.

Not only was State Farm's claim evaluation contradicted by its own third-party inspector (by marking the hail-damaged shingles and the 10+ notation), and by its two

---

[4] Wiley is an experienced roofing contractor who also has extensive experience evaluating and adjusting roof damage insurance claims. See Doc. 35, Plaintiffs' Response to Defendant's Daubert Motion.

[5] Because Plaintiffs' focus in this response is on the bad faith claim, Plaintiffs do not include much discussion of the wind damage. Though Plaintiffs and State Farm are in sharp disagreement regarding the extent of the wind damage, the primary focus of the bad faith claim is State Farm's contention that the roof shingles did not have hail damage.

adjusters (who agreed there was at minimum hail-caused granular loss), but even if State Farm was correct that only five shingles needed to be replaced, it failed to properly estimate that repair. First, you cannot buy five single shingles. Shingles are sold in bundles of twenty. Thus, at minimum, State Farm should have allowed for the cost of a full bundle. Second, the roof metals estimated for replacement by State Farm include hail-damaged "turtle vents." These items are installed underneath the shingles. There are two ways to remove and replace damaged roof vents. First, many roofers will remove and replace the shingles that overlay the vents. Alternatively, sometimes a roofer can bend the overlying shingles up and out of the way enough to remove and replace the damaged vent. But either process runs the risk of damaging additional shingles. That is particularly so with an older roof (Plaintiffs' roof was about 11 years old at the time). Thus, before conducting such "spot repairs," the insurer needs to conduct a repairability assessment to make sure that the removal or bending of some shingles will not cause a cascade of additional damage requiring replacement of the entire affected elevation. If, as State Farm claims, the shingles are "worn out," then it is very unlikely that they would pass a repairability assessment to evaluate whether the condition of the shingles would allow for spot repair of the vents. It was bad faith not to conduct the necessary repairability assessment.

In short, State Farm charged for all-perils replacement cost coverage that it will almost never pay on an older roof. Unless the hail is so extreme that it utterly destroys the roof, State Farm will claim that the roof is just worn out from all of that hail damage that does not meet its extracontractual "qualifying hail damage standard." That is not all-perils coverage—nor is it replacement cost coverage—it is just a moneymaking scam. This case

reveals a sham investigation designed to deliver a claim estimate below the deductible so that State Farm can avoid its contractual duty. None of the above was "legitimate" claims handling. Oklahoma law thus precludes summary judgment on Plaintiff's breach of contract, bad faith, and punitive damages claims. The motion must be denied.

## II. PLAINTIFFS' FACTS PRECLUDING SUMMARY JUDGMENT
### ("PLF No.," hereafter)

1: The State Farm policy contains an "all-risk"/"all-perils" coverage grant:

> SECTION I – LOSSES INSURED
>
> COVERAGE A – DWELLING
>
> We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT INSURED or
> otherwise excluded or limited in this policy.

Doc. 33, State Farm Fact ("SFF No." hereafter) No. 4. With all-perils coverage, the insured need only show "accidental" damage which the insurer must then pay unless *the insurer <u>proves</u>* that some exclusionary language applies:

> An 'all-risk' policy cover[ers] a loss when caused by any fortuitous peril not specifically excluded by the policy . . . Once an insured under an all-risk policy shows the loss is a covered loss, <u>then the insurer has a burden to show the loss is excluded by the policy</u>.

*Okla. Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*, 2019 OK 3, ¶ 16, 457 P.3d 997, 1002. Emphasis added.

What the above "burden" means, practically, is that an insurer (like the Courts) *must construe "ties" (or uncertainty) in favor of coverage*. Here, as noted by Plaintiff's public adjuster, both State Farm adjusters agreed there was hail damage—one just convinced the other it was not "qualifying hail damage." The policy does not allow for this secret

"qualifying" damage definition and State Farm should construe any uncertainty in favor of coverage. The policy also provides replacement cost coverage. Doc. 33-2, p. 35 of 54. That means if the home sustains loss, damaged parts must be replaced to new condition. *Id.*

2. Plaintiffs bought the home in November 2020. Ex. 1, Ms. Bales Deposition, 12:22-24.

3. Before buying the home, Plaintiffs had it professionally inspected; there was no roof damage at that time. *Id.* at 12:25-13:10.

4. After the January 2022 storm, Plaintiffs noticed that their roof was missing several shingles. SFF No. 7; Ex. 1, Ms. Bales Deposition, 21:14-23:14.

5. Plaintiffs had the roof inspected by Outdoor Creations Roofing & Solar ("OCR"). SFF No. 7. The OCR representative, Christopher Nicks, found substantial wind and hail damage and recommended replacement. SFF No. 7.[6]

6. Plaintiff submitted a claim with State Farm on January 13, 2022. SFF No. 6.

7. State Farm sent Ladder Now to conduct its investigation. SFF No. 9. Mr. Nicks, from OCR, attended. Nicks testified that he witnessed the Ladder Now representative mark multiple spots of obvious hail damage on the roof.[7] Nicks also testified that he has been on more than 100 inspections with Ladder Now and has never seen a Ladder Now representative mark anything other than hail damage in the way the representative marked

---

[6] Defendant took the deposition of Christian Nicks on September 18, 2023. The transcript of Mr. Nicks' deposition is not yet available. Upon receipt of the transcript, Plaintiffs will Move for Leave of Court to Supplement this Response to add specific citations to Mr. Nicks' testimony.

the Bales' roof. He testified further that when Ladder Now marks wear and tear damage, blistering, or anything other than storm damage, it does so with a "dash" or an "x" or something that is equally distinguishable from the circular (or "parenthesis," really) markings used for hail damage.[8]

8. The above-noted damage is seen clearly in the Ladder Now Photos. Ex. 2, Ladder Now Photos, pp. 50-55, 59-73, 81-86.

9. In addition to the above photographs, one of Ladder Now's photographs shows a marking in blue chalk that says "R=10+". *Id.* at p. 67, top photograph, p. 75, bottom photograph. Another photograph is marked similarly for the front elevation: "F=10+". These markings are industry standard markings that indicate that there were more than ten hail strikes in those particular "test squares"—for the front and rear elevations. See, e.g., Ex. 3, Ally Letter, p. 1; Ex. 4, Meadows Affidavit.

10. That Ladder Now knows how to mark the size of its test square is shown by other photographs, such as one clearly marked "R [or rear] 10X10," indicating the size of the test square. Ex. 2, Ladder Now Photos, page 56, top photograph.

11. Per both roofing and insurance industry standard, such findings require replacement of the roof. Ex. 5, Wiley Rule 26 Report, p. 10.

12. Despite the above findings, of hail-damaged shingles, by State Farm's agent,

---

[8] Defendant State Farm took the deposition of Christian Nicks on September 18, 2023. The transcript of Mr. Nicks' deposition is not yet available. Upon receipt of the transcript, Plaintiffs will Move for Leave of Court to Supplement this Response to add specific citations to Mr. Nicks' testimony.

State Farm estimated to repair only the five missing shingles. SFF Nos. 10, 16, 18. That resulted in State Farm's below the deductible "estimate." SFF No. 18.

13. Plaintiffs then hired Meleah Meadows with Ally Public Adjusting. SFF No. 12.

14. Like Mr. Nicks (and the Ladder Now agent), Ms. Meadows also found many hail damaged shingles and determined that the roof must be replaced. Ex. 3, Ally Letter, pp. 1-2; Ex. 6, Ally Report, generally; Ex. 4, Meadows Affidavit.

15. Ms. Meadows also pointed out to State Farm that its own inspector, Ladder Now had marked "10+" hail hits on at least two elevations. Ex. 3, Ally Letter, pp. 1; Ex. 4, Meadows Affidavit; Ex. 6, Ally Report, pp. 22, 55.

16. State Farm claimed that the markings indicated the test square *size* rather than the *number* of hail hits. Ex. 10, State Farm Email; also Ex. 7, Claim Notes, p. 1. State Farm's adjuster told a different story in his deposition. He first said that the roofer (Christian Nicks), rather than State Farm's Ladder Now agent (Korbin Leach), made the markings. Ex. 8, Phillips Deposition, 195:16-196:6. A page later in his deposition, he "asserted" and "guaranteed" the markings were made by Ladder Now (but claimed, contrary to Mr. Nick's testimony, that was only to designate areas "for consideration" by the State Farm adjuster). *Id.* at 197:7-15, 198:2-199:17. At worst (and that is the inference that is Plaintiffs' due at this juncture), State Farm ignored hail damage that its own on-site inspector tried to call to its attention. At minimum, as shown next, State Farm did not bother to discuss the matter with its onsite inspector before it doubled-down with its "no hail-damaged shingles" coverage position.

17. State Farm adjuster, Mr. Phillips (who testified he made all the decisions on the

10

claim) never bothered to confirm with its Ladder Now agent that the "10+" markings did not really mean what they always mean in the industry. *Id.* at 199:11-17. Apparently, State Farm also did not review the Ladder Now photographic evidence which shows that Ladder Now knows how to mark square size as "10X10." Both of those facts give rise to the reasonable inference of an inadequate or sham investigation.

18. Ms. Meadows attended State Farm's second inspection. SFF No. 15. She pointed out the many hail-damaged shingles (as shown in her report, Ex. 6) to the two State Farm adjusters who attended—J.R. Phillips and Khalid Fouda. Ex. 3, Ally Letter, p. 1; Ex. 4, Meadows Affidavit. She notes that Phillips agreed with her that the shingles had hail damage. *Id.* But every time Phillips agreed there was hail damage, Fouda then "disqualified" *the damage* <u>as noncovered *damage*,</u> claiming that the hail had not "fractured" or "bruised" the shingle. *Id*. <u>Mr. Bales confirmed that he overheard this conversations as well</u>. Ex. 9, Mr. Bales Deposition, 71:16-72:6, 73:9-15. Per this Court's decision in *Smith v. CSAA Fire & Cas. Ins. Co*., 2019 U.S. Dist. LEXIS 163068 (W.D. Okla. Sep. 24, 2019), *cherry-picking only favorable evidence from the insurer's conflicting evidence is evidence of bad faith. Id.* at *19 ("Further, there is some question as to whether Defendant's experts who investigated the claims after suit was filed determined that some of the damage had, in fact, been caused by an earthquake"). This also violates the rule stated above regarding the insurer's burden under all-perils coverage.

19. Of even greater concern than the above, two State Farm adjusters agreed with Ms. Meadows that hail impacts had caused "granular loss," (meaning that hail striking the shingles dislodged some of the UV-shielding ceramic granules that form the top coating of

the shingles). Ex. 3, Ally Letter, pp. 1; Ex. 4, Meadows Affidavit. Despite that admitted granular "loss," State Farm denied coverage as noted above because it did not believe there was "bruising" or "fracturing" of the underlying mat. *Id*. In a bit of insurance company doublespeak, the adjuster who made the coverage decision admitted that hail can cause granular loss, but then claimed that "[g]ranular <u>loss in and of itself does not mean that the shingle has been damaged.</u> Ex. 8, Phillips Deposition, 36:21-37:19.

20. Later in his deposition, Adjuster Phillips made it crystal clear that State Farm imposes an extracontractual "functional" damage definition to hail claims. First, he clarified that the public adjuster stated that she "believe[d] that [hail-induced] granular loss is actual damage" whether or not there is "matting breakage," to which Mr. Phillips responded: "Unfortunately, just granules off a shingle doesn't constitute damage." *Id.* at 158:1-15. Though he then admitted that hail (and sleet) cause granular loss, he then stated "[t]here is no functional damage to the shingle from granular loss." *Id.* at 159:17-160:2. But there is no "functional damage" limitation (or "cosmetic damage" exclusion) in the policy. Thus, even if the damage were *mere* cosmetic damage, it is covered. E.g., *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 977 (D. Kan. 2016) ("[t]here is no exception to the definition of 'loss' for cosmetic damage or any other kind of particular damage"); see also *Koontz v. CSAA Fire & Cas. Ins. Co.*, No. CIV-18-801-SLP, 2019 U.S. Dist. LEXIS 237133 (W.D. Okla. Aug. 22, 2019) (permitting plaintiff expert to testify industry standard requires payment for cosmetic loss).

21. Even more telling, <u>Phillips then admitted that such loss "may affect the longevity</u> [but it is State Farm's] assertion that for hail, it has to break the matting and compromise

the water shedding ability of the roof." *Id.* at 160:3-13. Adjuster Phillips then doubled-down, <u>testifying that State Farm's policy is that even if **all the granules were displaced by hail**, that would not compromise water-shedding ability and so it would not constitute covered damage</u>. *Id.* at 200:18-201:7, 201:15-16, 207:19-208:2. Certainly State Farm could write such a policy. But until it does, this extracontractual and invisible "definition" constitutes bad faith <u>every time it is applied</u>. To this point, Phillips admitted the policy does not have a cosmetic damage exclusion for composite shingle roofing. *Id.* at 160:24-161:9. As noted, this is just a means for State Farm to charge more for that all-perils replacement cost coverage that it will never pay on an older roof.

22. By imposing a requirement of shingle "bruising" or "fracture," State Farm imposes a damage definition that is not supported by policy language, which, as shown previously, pays for *all* "direct physical loss" unless excluded by the policy. Also, since the policy is a replacement cost policy, the direct physical hail-induced loss should have resulted in an estimate to replace all the granular loss shingles.

23. State Farm's claim notes also show that it imposes the above described extracontractual definition of loss as a State Farm "standard." Ex. 7, Claim Notes, p. 3.

24. State Farm knows that it is bad faith to impose an extracontractual definition of hail damage. *Brown v. State Farm Fire & Cas. Co.*, No. 20-CV-0418-CVE-JFJ, 2022 U.S. Dist. LEXIS 52544, at *14 (N.D. Okla. Mar. 23, 2022) (submitting bad faith claim to jury where State Farm adjuster claimed that State Farm "doesn't pay for hail caused granular loss, and will not consider hail damage to shingles unless the hail breaks through the fiberglass mat"); also *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, No. 13-cv-229-wmc,

13

2014 U.S. Dist. LEXIS 32949, at *24 (W.D. Wis. Mar. 12, 2014) (rejecting insurer claim that "cosmetic" damage is not covered loss[9]).

25. State Farm's extracontractual definition is like an insurer refusing to pay for hail dents in a car because such "dings" are not "functional" damage. Really, it is even worse than that—hail dents on a sports car may be ugly but they do not reduce functionality. Here, by contrast, hail damage consisting only of granular loss does reduce the roof's functional lifespan (as admitted by State Farm) and it reduces UV and fire protection. Ex. 8, Phillips Deposition, 160:3-13; Ex. 3, Ally Letter, pp. 1; Ex. 4, Meadows Affidavit.

26. Since State Farm once again effectively denied the claim, Plaintiffs contacted the undersigned firm to evaluate; Sean Wiley, a highly qualified insurance claims professional and roofing contractor was sent to evaluate the claim. As he has previously testified Mr. Wiley is trusted to steer the firm away from meritless claims:

> A One of the reasons why I believe Mansell, Engel & Cole hires me so far is because -- is because when I go out and I look at the -- I look at the house, and if someone is claiming that there's damage and they ask me to go look at it, I'll go look at it and I'll tell them, yes, there's damage or no, there's not damage. So I'll tell them if it's a good case or not. And I believe they respect my opinion in what I see and my knowledge in the construction industry and the insurance industry.

Ex. 13, Wiley Excerpt Merchant, 99:25-101:4.

27. Mr. Wiley inspected the roof and found "extensive storm damage to the

---

[9] Though that policy defined "loss" to specifically include "damage," the opinion applied also to "loss" only language. Also, that State Farm's coverage of "direct physical loss" includes even non-"functional damage" is indicated by its coverage of the dented roof metals despite there being no indication the dents prevented the vents, gutters, and vent caps from functioning properly.

laminated composition shingles and roof surfaces consistent with . . . wind and hail damage. . . . Ex. 5, Wiley Rule 26 Report, p. 10. That damage consisted of "bruising, punctures and fractures in the laminated composition shingles indicative of hail damage." *Id.* He also found "lifted shingles indicative of wind damage." *Id.* He found and marked "8+" hail hits/and or wind damage[d] shingles on the East, West, South, and North elevations]." *Id.* He too determined that the roof was a total loss. *Id.*

28. Despite the above findings by the roofer, by the public adjuster, by both State Farm adjusters (who agreed there was at least hail caused granular loss), and Sean Wiley, the only shingle repair State Farm has ever included in its "estimates" is to replace the five shingles that were blown off the roof. SFF Nos. 10, 16, 18.

29. Not only did State Farm's evaluation run contrary to the findings of its own third-party inspector, Ladder Now (which, as shown, identified, and marked many hail-damaged shingles and noted "10+" hail-damaged shingles on the front and rear elevations), and run contrary to its two adjusters (who agreed there was at minimum hail caused granular loss) but State Farm also compiled an unreasonable estimate for the damage it did accept. As noted, State Farm estimated to replace only the 5 *missing* shingles. Ex. 11, State Farm Estimate Excerpt. But shingles are sold in bundles of 20. Ex. 5, Wiley Rule 26 Report, p. 10. Thus, at minimum, State Farm should have estimated for a full bundle.

30. State Farm also estimated to replace four hail-damaged "turtle vents." Ex. 11, State Farm Estimate Excerpt. To replace the vents, which are fastened to the roof underneath the shingles, requires either: (1) removal of the shingles from an area around each vent, or (2) lifting the shingles around the vent. One or the other must be done to

remove the old vent and replace it with a new vent. Ex. 4, Meadows Affidavit. Either method will damage any adjacent shingles that are fragile from age; that causes a cascade of additional damage. *Id.* For that reason, the insurer is supposed to conduct a repairability assessment to determine if a spot repair is practicable. *Id.* If it is not, then replacement of each affected slope is the only remaining option. *Id.*

31. Though the policy does not limit hail damage to "functional" damage, State Farm's hired expert Derek Van Dorn applies a *"functional" damage definition, stating functional hail damage* is any damage that either diminishes the "water-shedding capability of the roof" **or "the reduction of the expected life of the roofing material**." Ex. 12, Van Dorn Report, p.7. Since, as shown above, State Farm agrees that granular loss reduces the expected life of the roofing material, even applying State Farm's "expert's" "functional" definition, the claim should have been paid. Again, this invokes this Court's holding in *Smith v. CSAA.* Additionally, not only is it bad faith for State Farm (and its adjuster) to apply a non-existent functional damage limitation, but it is also bad faith for State Farm to use—and to continue to use—an expert who applies such a limitation. *N. Shore Co.-Owners' Ass'n v. Nationwide Mut. Ins. Co*., No. 1:18-cv-03632-JPH-TAB, 2019 U.S. Dist. LEXIS 122321, at *5 (S.D. Ind. July 22, 2019).

32. Van Dorn cites data showing 1" diameter hail on six separate occasions from the time the Bales purchased the home (and insured with State Farm) to February 2022 (when State Farm conducted its second inspection). Ex. 12, Van Dorn Report, pp. 33-34.

33. Van Dorn admits that granular loss can be caused by "weathering of the roof." Ex. 12, Van Dorn Report, p.9. The subject wind and hail qualify as "weathering." Plaintiffs' duty under the policy is to prove "accidental direct physical loss." Plaintiffs have proven that. That shifted the burden to State Farm to <u>prove</u> an excluded cause; it proves at most <u>a possibility of an excluded cause. That is not enough. The denial of coverage despite State Farm's failure to meet its burden is yet more evidence of bad faith claim handling</u>.

34. Adjuster Phillips, who made the coverage decisions, has no experience installing or repairing roofing. Ex. 8, Phillips Deposition, 16:10-17.

## III. RESPONSE TO STATE FARM'S STATEMENT OF FACT

SFF Nos. 1-4, 6-9, 12-14, 17, 19-20, 22, 24-27 are undisputed. There does not appear to be a SFF No. 5.

SFF No. 10: As demonstrated in Plaintiffs' fact section, there was substantial additional storm damage beyond the items listed in this fact.

SFF 11: Undisputed that the letter says this; it is disputed, though, for all the reasons stated above, that the letter accurately records the damage to Plaintiffs' property.

SFF 15: Disputed that the State Farm inspector "did not believe the areas marked by Ally showed hail damage." As noted in Plaintiffs' fact section, the State Farm adjusters both agreed there was hail-induced granular loss; they just disagreed with Ally about significance of the damage. But that is not at issue with this all-perils coverage. It is

undisputed that Ally "disagreed with State Farm's <u>definition of hail damage</u>." That is because Ms. Meadows, unlike State Farm and its adjusters, understands the nature of all-perils coverage. Again, as is shown in Plaintiffs' fact section, the State Farm adjusters agreed that there was hail-induced shingle damage, they just applied an internal "standard" that "disqualifies" hail <u>loss</u> that does not puncture or bruise the mat. As also shown, that internal guideline violates the basic premise of all-perils coverage. This "fact" by State Farm is telling in that <u>it is an admission that State Farm considers that some actual and admitted "hail damage" does not satisfy "State Farm's definition of hail damage</u>." Once again to this point, the subject policy contains no particular "definition of hail damage." See Doc. 33-2 (the subject policy). Thus, being all-perils coverage, <u>any hail damage</u> that is not excluded hail damage <u>is covered hail damage</u>. The only exclusion in the policy that could apply to *admitted* <u>hail</u> damage is the preexisting damage exclusion (since hail damage is not wear and tear damage). State Farm has never claimed preexisting damage.

SFF 16: Though State Farm evaluated the claim as though these areas showed wear and tear rather than hail damage, <u>it always knew that was not true</u>. As shown, both State Farm adjusters agreed there was hail-induced granular loss, and adjuster Phillips (who made all of the claim decisions) agreed that hail-induced granular loss diminishes the roofs lifespan. <u>That is covered loss under the policy</u>. Recall that Phillips also testified that if even all of the UV and fire protecting granules were lost to hail, State Farm would not cover that loss because it would not reduce the roof's water shedding capability. But a roof covering is more than a water-shedding material. As noted above, it also provides UV and fire protection, and, as demonstrated by the sports car analogy, a roof covering also supplies

18

aesthetics. There is just nothing in this all-perils policy to exclude any roof damage that does not compromise water shedding. That is an unreasonable, bad faith position.

SFF 18: As noted in response to SFF No. 11, it is undisputed that the letter says that State Farm attributes the shingle damage to wear and tear. As also previously shown, that claim was always known to be false by State Farm and due to the artifice of its imposition of the hidden extracontractual "State Farm's definition of hail damage" that violates the fundamental premise of all-perils insurance coverage.

SFF 21: Disputed that Ally presented no additional facts or evidence of damage to justify a third inspection. As shown in Plaintiffs' fact section, Ally presented evidence that State Farm's first inspector marked substantial hail damage in excess of 10 hail strikes in at least two of the roof's elevations, that State Farm's adjusters had found (and disqualified) hail "damage," and evidence that State Farm was committed to a course of bad faith by imposing its extracontractual definition of hail damage.

SFF 23: This information was actually conveyed to State Farm on March 21, 2022. Ex. 3, Ally Letter, p. 1; Ex. 4, Meadows Affidavit. Regardless the date, as shown, State Farm's interpretation of the chalk markings flies in the face of industry standard. Perhaps even more troubling as it pertains to evidence of bad faith, as also shown previously, State Farm failed to confirm its claim with Ladder Now.

SFF 28-50: These bare facts are undisputed, but they have no bearing on the current motion. None of Plaintiffs' claims are premised upon their lay understanding of roofing industry and insurance industry standards. Neither Plaintiff is qualified to evaluate roof damage. To this point, Mr. Bales testified that evaluating for hail damage "is for the

professional." He was, though, "notified that there was extensive hail damage." That is why Plaintiffs hired OCR Roofing, Ally Public Adjusting, and the undersigned law firm. Nor are Plaintiffs required to articulate the basis for their bad faith action—they must instead "present sufficient evidence reasonably tending to show bad faith." *Whiteman v. State Farm Fire & Cas. Co.,* No. CIV-16-975-D, 2018 U.S. Dist. LEXIS 54412, at *10 (W.D. Okla. Mar. 30, 2018) (quoting from Oklahoma's *Badillo* opinion) (emphasis added). Still, Mr. Bales testified that he thought State Farm "under investigated" the claim. He also pointed out the fact that State Farm "is not even following their little pamphlet of what a hail strike looks like." Truly though, as demonstrated by all of the above, Plaintiffs present more than "sufficient" evidence to support their claims; the motion must be denied in full.

## IV. ARGUMENT AND AUTHORITY

### Summary Judgment Standard

Summary judgment is proper only if the movant shows there is no genuine dispute on any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine dispute "exists when the evidence, construed in the light most favorable to the [nonmovant] is such that a reasonable jury could return a verdict for the non-moving party.'" *Carter v. Pathfinder Energy Servs., Inc*., 662 F3.3d 1134, 1141 (10th Cir. 2011). All facts and inferences are viewed in favor of the nonmovant and the burden is always on the movant to show there is no genuine dispute. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). State Farm cannot meet that burden.

**Proposition I: The Contract Claim is in Dispute: State Farm *Proves That***

State Farm's contention about the contract claim makes no sense. It notes at page 2: "What is actually at issue in this case is a legitimate dispute in the valuation of a claim." It then claims that "is not actionable under Oklahoma law." Huh? Though Plaintiffs do not agree the dispute is "legitimate," there is certainly a disputed contract claim at issue. This is even shown by State Farm's proposition (Mot. at 11-12): State Farm contends the damage was wear and tear and blistering (though its own inspector identified hail damage and its adjusters admitted there is hail damage). By contrast, Plaintiffs' roofer, public adjuster, and expert agree there is covered hail damage. That is a contract dispute.

**Proposition II: Plaintiffs will Prove their Bad Faith Claim**

In addition to cases discussed in the fact sections, this case is like *Guernsey v. Am. Nat'l Prop. & Cas. Co.,* No. CIV-20-632-J, 2021 U.S. Dist. LEXIS 224145 (W.D. Okla. Sep. 1, 2021). *Guernsey* notes that bad faith is proven under Oklahoma law if there is no 'legitimate dispute' regarding the amount or extent of coverage, or if the dispute is "legitimate," there must be additional evidence of bad faith." *Id.* at *5. The "additional evidence" may include a showing the insurer did not really rely on the "legitimate dispute," denied for an illegitimate reason, conducted an "inadequate investigation," or otherwise "failed to treat the insured fairly." *Id.* at *5. In *Guernsey,* like here, the assigned adjuster "had almost no training" in pertinent issues and "did not know how to properly install or replace" the subject roof. *Id.* at * 7-8. That gave rise to the bad faith inference.

21

Then there is *Whiteman v. State Farm Fire & Cas. Co.*, No. CIV-16-975-D, 2018 U.S. Dist. LEXIS 54412 (W.D. Okla. Mar. 30, 2018), mentioned earlier. This Court rejected State Farm's claim that its conduct was inherently reasonable because its vendor-investigator failed to rule out other covered causes of loss. That was not as bad as the adjusters here agreeing there was hail-induced granule loss (which one even admitted shortens the shingle's lifespan), but then applying a nonexistent "exclusion." It is like State Farm's expert agreeing that hail causes "weathering" and reporting 1" hail on several occasions but then failing to consider his own firm's hail sizing data.

As noted State Farm's conduct is worse here than in *Whiteman.* Additionally here State Farm applies the extracontractual hail damage definition which Judge Eagan already rejected in *Brown*). Denying coverage without a valid policy basis is also bad faith.

*Emcasco Ins. Co. v. Watonga Indus.*, 2022 U.S. Dist. LEXIS 126615 (W.D. Okla. July 18, 2022) is also in point. This Court denied summary judgment there because "there [was] evidence from which a reasonable juror could conclude that [the insurer] determined that at least some of the damage to the roof was a covered loss but then issued policy benefits that it knew would be inadequate to fix the damage." *Id.* at *20. Here, that rule applies to State Farm's failure to pay for a full bundle of shingles as well as to its failure to conduct the required repairability assessment to see if repair was practicable.[10]

---

[10] See also *Daniels v. CSAA Gen. Ins. Co.,* No. CIV-18-1115-R, 2019 U.S. Dist. LEXIS 146422 (W.D. Okla. Aug. 28, 2019) (insurer appeared to have ignored its own valuation— State Farm does that by failing to consider its own adjuster's testimony that there is hail "damage") and *Holmes v. State Farm Mut. Ins. Co.,* No. CIV-19-746-R, 2020 U.S. Dist. LEXIS 214742 (W.D. Okla. Nov. 17, 2020) (insurer failed to reassess after new

There is also *Merchant v. Safeco Ins. Co. of Am.,* Case No. CIV-21-391-J (W.D. Okla. November 15, 2022). There, Judge Jones denied summary judgment on bad faith because: (1) the insurer estimated to replace damaged roof metals, but failed to include costs for removal of the shingles to access the metals, (2) the insurer did not conduct a "repairability assessment" to determine if the shingles adjacent to the valleys could be properly replaced, and (3) the insurer's engineer ignored less favorable weather data, and its own internal literature to downplay hail size. All of these factors apply here as well.

Finally, *Brown* is worth another mention. Recall Judge Eagan denied summary judgment because there was evidence of a practice of ignoring hail damage to roof shingles unless the hail penetrated through the fiberglass mat. Judge Eagan was not out on a limb—Oklahoma law permits claims based upon a pattern or practice of unlawful claim denials. E.g., *Vining v. Enterprise Financial Group, Inc*., 148 F.3d 1206, 1213 (10th Cir. 1998).

The above cases track well with Oklahoma bad faith law. For instance, a fairly recent published Oklahoma opinion holds it is the jury's role to determine complex bad faith facts. *Linn v. Oklahoma Farm Bureau Mut. Ins. Co.,* 2020 OK CIV APP 62, 479 P.3d 1013. The bad faith question there revolved around a single issue: whether the "cattle's" "disappearance" was "likely" theft. But resolving that single question implicated several factual matters: whether a Texas Ranger's investigation was accurate, and whether it was "reasonable" for the insurer to accept the Ranger's results. The answer required analysis of the foundation of the Ranger's findings and consideration of "inconsistencies" in the

---

information—State Farm does that by ignoring the evidence called to its attention about Ladder Now's findings and that its adjuster "disqualified" admitted hail damage).

evidence. Such factual disputes (as opposed to "primarily legal" disputes) are just not appropriate for summary adjudication. *Id.* at ¶¶ 13-14, 1019.

The facts in *Linn* were not as complex as those here. Here, State Farm cites 50 material "facts"—many of which are disputed or give rise to disputed inferences. Plaintiffs cite an additional 36 undisputed material facts of their own. Bad faith here is not confined to a single factual issue, but to several discrete claim handling matters. This is, like *Linn,* a fact pattern appropriately decided by the jury.

*Linn* is applied by Judge Cauthron in *Coffin v. Covington Specialty Ins. Co*., 2020 U.S. Dist. LEXIS 235328. That plaintiff cited his technician's report that HVAC damage "may have been caused by lightning." *Id*. at * 1-2. That did not satisfy the insurer so it had the technician fill out an affidavit, where he was more definite. The insurer denied coverage, though, because its third-party service reported there were no lighting strikes in the area. The court denied summary judgment because *to do otherwise would improperly require consideration of the facts* ***in the light most favorable to the movant***; Judge Cauthron holds that the jury may have found it inappropriate for the insurer to rely upon the STRIKEnet report to deny payment and also that resolution of the dispute "requires a determination of which facts should be given what weight." *Id.* at * 5-6.

Indeed, as in *Coffin*, so too here. It is for the jury to determine whether State Farm's handling of the "10+" dispute and Ladder Now's marking of hail damage was appropriate. Likewise, it is for the jury to decide if State Farm's application of a nonexistent policy definition is reasonable. That is particularly so in light of State Farm's own adjuster admitting the shingles were damaged by hail and that granular loss shortens the shingles'

lifespan, but that State Farm nevertheless denies all but what it considers "functional hail damage." In short, State Farm asks the Court to "decide" the facts and inferences in its favor. That is inappropriate here as it was in all of the above cases.

Finally, there is another case specific to State Farm's failure to conduct a repairability test: *Gutkowski v. Okla. Farmers Union Mut. Ins. Co*., 2008 OK CIV APP 8, 176 P.3d 1232. That insured showed that removal for repair of the hail-damaged top layer composition shingles would destroy the structural integrity of the underlying wood shingles such that they could not be reused as nail decking. *Id.* at ¶ 4, 1234. The insurer argued the structural damage to the underlying wood shingles was not a covered loss because "it was already in a deteriorated and inadequate condition prior to the covered peril and [it] did not sustain a direct physical loss as a result of the hailstorm." *Id.* The court rejected that argument because "a roof is a unified product comprised of all its component parts and materials . . . ." *Id.* at ¶ 11, 1235. Where it is anticipated that repair of part of a roof will cause damage to other parts, that resulting damage is also covered loss:

> Because the wood shingles in the instant case served as the decking, we hold the wood shingles were an integral component of the roof. We therefore reject Farmers claim that the anticipated damage to the wood shingles (an integral portion of the whole roof) was not a covered loss under the policy.

*Id.* State Farm knows this rule and cannot avoid it by claiming the surrounding roof surfaces were deteriorated—that is the whole point of the repairability assessment. As in *Gutkowski,* where repair of one part of the roof renders another part unserviceable, even that deteriorated part is also covered loss. It was unreasonable for State Farm's claim investigation not to consider *Gutkowski* or include a repairability assessment.

The facts and inferences do not support but a single inference. Instead, a reasonable jury could find that State Farm's investigation was inadequate or a sham or that it "otherwise 'failed to treat [the Bales] fairly.'"[11] Bad faith is for the jury.

**Proposition III: Resolution of the Punitive Damages Claim is for the Jury; at Minimum the Decision Whether to Submit Punitive Damages is Premature**

**A. Oklahoma Punitive Damages are Rarely Susceptible to Summary Process**

Under Oklahoma's current regime, the court must instruct on punitive damages "unless there is a complete lack of evidence to support an inference of the conduct required by [the statute]." *Estrada v. Port City Props.,* 2011 OK 30, ¶ 18, 258 P.3d 495, 503. It is then solely for the jury to decide if that evidence is clear and convincing. *Id.* at ¶ 20, 504. Because older opinions (such as those cited by State Farm) apply a different version of the punitive damages statute, this is worth unpacking:

Per *Estrada,* Oklahoma's punitive damages statutes have had at least three ideations—one under 23 O.S. § 9 and two under 23 O.S. § 9.1. Section 9 required submission of "capped" punitive damages if there was "any competent evidence" of the kind of conduct to support punitive damages. *Sides v. Cordes,* 1999 OK 36, ¶ 11, 981 P.2d at 305. But, also under Section 9, after deciding there was "competent evidence" the trial court then had to make the decision, outside the presence of the jury, whether that evidence was clear and convincing. *Id.* at ¶ 10, 304-05 (quoting the language of Section 9). Thus, if the Court decided there was competent evidence, but that evidence was not "clear and convincing," the jury could award only capped damages; *but if the court decided* the

---

[11] In the words of *Guernsey,* at *5 (quoted citation omitted).

26

evidence *was* clear and convincing, the cap was lifted and the jury could award uncapped damages;  *Id.* at ¶ 11, 305; *Estrada,* 2011 OK 30 at ¶ 17, 503.

Under Section 9, thus, "[b]oth . . . threshold rulings [(1) whether there was any competent evidence to support punitive damages and (2) whether the evidence was clear and convincing to remove the cap were] issues of law for the trial judge." *Id.* at ¶ 18, 503. Section 9 was replaced by Section 9.1. The 2002 version of 9.1 "is the current statutory vehicle that governs all claims for punitive damages." *Estrada,* 2011 OK 30 at ¶ 19, 503. This version "expands the factors [to consider "seriousness, profitability, duration," etc.] **and** it is directed at the jury, and not the reviewing court." *Id.* Emphasis added. <u>Significant under the new framework: Now, the trial court makes only one determination—whether there is "any competent evidence" of Section 9.1 conduct. *Id.* at ¶ 20, 504. *Whether that evidence is "clear and convincing" is solely for the jury*</u>:

> Nothing in the current statutory framework changes the trial court's responsibility to determine whether *any competent evidence* exists which would warrant submission of the question of punitive damages to the jury. <u>Once this determination is made, the statute guides the jury as to the many factors of conduct to consider, the level of conduct, **and the degree of proof necessary**</u> to make an award of punitive damages, if any.

*Id.* Emphasis added.

Per *Estrada,* thus, the court's prong—"any competent evidence"—is satisfied "unless there is a complete lack of evidence to support an inference of [9.1 conduct]." *Id.* at 18, 503. <u>The second "prong," clear and convincing, is always for the jury</u>. *Estrada* shows, thus, that the older framework is changed by statutory amendment.

This new "framework" has special implication in federal court. It is a statutory repudiation of the federal "heightened standard" when it comes to Oklahoma punitive damages. The Oklahoma Supreme Court is the final arbiter of Oklahoma law. That court holds that under Oklahoma **statutory** law, the trial court must submit punitive damages to the jury "unless there is a complete lack of evidence [of 9.1 conduct]." That is, in *Liberty Lobby* terms, the "standards and boundaries . . . provided by the applicable evidentiary standards." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, (1986). If the trial court may make only that one determination and the jury *alone,* ***guided by the statute,*** determines whether the evidence is "clear and convincing," then it usurps the jury's role, invades the legislative power, and is an improper judicial reinstatement of the abrogated framework, for a federal court to apply the "heightened standard"[12] to Oklahoma punitive damages.

The above is seemingly recognized by Judge Patrick R. Wyrick—formerly Justice of the Oklahoma Supreme Court—in *Roberson v. Wal-Mart, Inc.,* No. CIV-21-657-PRW, 2022 U.S. Dist. LEXIS 129504, 11 (W.D. Okla. July 21, 2022) ("When reviewing claims for punitive damages at the summary judgment stage, the Court's role is to "determine whether *any competent evidence* exists which would warrant submission [of] the question of punitive damages to the jury" and "the issue [of punitive damages] is often 'best resolved at trial with the benefit of a complete record'").

This Court seems to recognize the above standard in *Emcasco*, 2022 U.S. Dist. LEXIS 126615, at *22 ("Viewing the record in the light most favorable to Watonga, the

---

[12] Plaintiffs do not suggest the heightened standard never applies in diversity, only that it cannot under the punitive damages framework enacted by Oklahoma's legislature.

Court concludes that the genuine disputes of material facts related to Watonga's bad faith claim also preclude a summary adjudication of the issue of punitive damages"); Accord, *Merchant*, 2022 U.S. Dist. LEXIS 235352, at \*10.

### B. The Evidence Supports Punitive Damages

Per *McLaughlin v. Nat'l Benefit Life Ins. Co.*, 1988 OK 41, 772 P.2d 383, all that is required to award punitive damages is "gross negligence." *Id.* at ¶¶ 11, 17-19, 22, 385-87, 89 (applying 23 O.S. § 9)—this is still the rule under Section 9.1. See, e.g., *Fox v. Mize*, 2018 OK 75, ¶ 11, 428 P.3d 314, 321. Also, malice may be inferred (E.g., *Slocum v. Phillips Petroleum,* 1983 OK 183, 477 P.2d 67, 70) and punitive damages proven by circumstantial evidence. *Estrada,* 2011 OK 30, ¶ 22, 258 P.3d at 504.

Additionally, the Oklahoma Supreme Court has defined the minimum level of culpability for bad faith liability as "more than simple negligence, but less than the reckless conduct necessary to warrant punitive damages." *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, n.6, 121 P.3d 1080. That means at least two things: (1) most bad faith conduct will overlap with punitive damages conduct,[13] and (2) even the Oklahoma Supreme Court cannot pinpoint the point at which bad faith liability also gives rise to punitive damages liability. Both are strong evidence that in most cases where the bad faith claim survives summary judgment the punitive damages claim should also be decided, as noted by Judge Wyrick, "at trial with the benefit of a complete record."

---

[13] Since bad faith conduct runs from some undefined point between simple negligence and recklessness and then runs the gamut from that starting point through all reckless, intentional, or wanton conduct while punitive damages conduct includes all reckless conduct and runs from there through intentional and wanton conduct.

Applied here, the mere fact that State Farm applies a nonexistent, secret definition to hail *damage*—if that were all that happened here—surely gives rise to a claim for punitive damages. Add to that the fact that the State Farm adjuster admits that there was hail *damage* to the shingles and that that *damage* shortens the shingles' lifespan, as well as State Farm's continual reversal of the all-perils burden of proof, and this case must surely go to the jury on the claim for punitive damages. The additional bases for bad faith liability stated in this response, such as State Farm's failure to properly estimate for admitted hail damage and its reliance upon Van Dorn's faulty assumptions, may be closer to that undefined *Badillo* line between bad faith and punitive damages conduct, but even those claims should be allowed to develop at trial before deciding whether they give rise to punitive damages as well. State Farm's quest for summary judgment on the punitive damages claim must also be denied.

## V. CONCLUSION

This suit is not susceptible to summary judgment. Plaintiff presents more than ample evidence of bad faith and punitive damages conduct. That conduct includes: (1) State Farm's extracontractual hail damage "exclusion," (2) its failure to consider the damage marked by its Ladder Now agent, (3) its failure to consider its own adjuster's findings that there were hail-damaged shingles, (4) its repeatedly and improperly construing all uncertainty against coverage despite having written all-perils coverage, and (5) its reliance upon an expert who fails to apply his own findings. The motion must be denied entirely.

Respectfully submitted,

s/ Casey R. Lawson

Adam M. Engel, OBA #32384
Jordyn M. Cartmell, OBA #31043
Casey R. Lawson, OBA #33947
MANSELL & ENGEL
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102
T: (405) 232-4100
F: (405) 323-4140
aengel@meclaw.net
jcartmell@meclaw.net
clawson@meclaw.net
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September 2023, the attached document was electronically transmitted to the Clerk's Office using the CM/ECF Systems for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

J. Andrew Brown

John S. Gladd