# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ROBERT BALES and<br>(2) DANIELLE BALES,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>(1) STATE FARM FIRE AND<br>CASUALTY COMPANY,<br><br>　　　　　　　　　　Defendant. | Case No: 22-cv-00851 |

## AFFIDAVIT OF MELEAH MEADOWS

I, Meleah Meadows, of lawful age and having been duly sworn, depose and state that I make this affidavit based upon my personal knowledge of the following:

1. I am an Oklahoma licensed public adjuster employed by Ally Public Adjusters, License No. 3000955374.

2. I was hired by the Plaintiffs to evaluate possible storm damage to their roof.

3. I first inspected the Bales' home on January 28, 2022. I observed and documented substantial hail damage to the roof shingles. My findings are documented in my report dated February 2, 2022, as well as in my letter to State Farm dated March 21, 2022, both of which I understand have been attached as exhibits to Plaintiffs' Response to State Farm's Motion for Summary Judgment.

4. Mr. and Ms. Bales reported that the roof was inspected shortly before they purchased the home, in November 2020, and there was no hail damage found at that time. Thus, the damage that I observed occurred during the time the home was insured by State Farm.

5. As documented photographically in my report, I observed evidence of many damaging hail strikes to the roof shingles. I marked many of these hail strike locations with chalk as shown in my report photographs. The damage included bruising as well as severe granular loss in patterns indicative of hail damage such as circular, oval, and irregular areas of damage. Wear and tear does not typically occur in the shapes found on the Bales' roof. Such hail caused granular loss prematurely ages the shingles by exposing the backing to damaging UV radiation (the "granules" are made of UV-shielding ceramic). Additionally, hail induced granular loss lowers the roof's flashpoint which puts the homeowner at a greater risk of fire damage.

6. In addition to my own observations, I noted chalk markings made by State Farm's representatives. Those markings include chalk marked hail strike damage as well as chalked symbols universally understood in the roofing and insurance industry to indicate the number of hail strikes in a given test square. These markings indicated "10+" which means that those test squares contained more than ten damaging hail strikes. When this was pointed out to State Farm, the insurer claimed that these markings instead referred to the size of the test square as "10X10." That is not true. Other photographs taken by the same State Farm representatives show that they knew how to mark the size of their test squares. My conclusion from the above is that someone at State Farm reversed the findings of the on-site inspector.

7. I inspected the roof a second time, along with two State Farm adjusters. As I pointed out the hail damage one of the two would agree that some of the damage was consistent with hail. The other insisted that it was not "qualifying" hail damage because it did not consist

of fracturing or bruising. Not only was there fracturing and bruising, but even if there was not, there is no language in the State Farm policy that permits such a definition of hail damage. Despite this, the two State Farm adjusters confirmed to me that State Farm imposes a company guideline that only fractured or bruised hail damage is covered hail damage.

8. Importantly, both State Farm adjusters agreed with me that there was hail-induced granular loss to the roofing shingles. As noted, that should have triggered coverage under the policy.

9. Finally regarding the hail damage that I observed, I compared some of my photographs of hail damaged shingles to photographs in a State Farm brochure demonstrating covered hail damage. The damage in my photographs exhibits the same characteristics as those in the State Farm brochure.

8. In addition to this affidavit, I attest that my report of February 2, 2022, and my letter of March 21, 2022, accurately state my findings regarding the subject claim.

10. In addition to refusing to cover damage such as the agreed upon granular loss, State Farm failed to properly estimate for the items it did cover. For instance, State Farm estimated to replace hail damaged "turtle vents." These vents are secured to the roof by screws or nails before the shingles are installed over top of the vent flashings. There are two ways to replace a turtle vent. One requires removal of the shingles overlaying the vent and the other requires bending those shingles up and away from the vent rather than removing them. Because both methods require disturbing existing shingles, industry standard and insurer claim guidelines require a repairability assessment to make sure

replacement of the damaged vents does not cause additional shingle loss. State Farm did not conduct a repairability assessment; that violates industry standard and insurer guidelines.

11. It is my professional opinion that the roof is a total loss as a result of a storm or storms during the relevant policy period. I estimated repair/replacement cost at $36,347.98 as of February 3, 2022. That price will have to be updated because materials pricing is volatile such that pricing has likely changed since I prepared my estimate more than a year ago.

FUTHER AFFIANT SAYETH NOT this 22 day of September 2023.

_____
Meleah Meadows

Subscribed and sworn to before me this 22 day of September 2023.

_____
Notary Public

My commission expires: 8/5/2026
(Seal)